Electronically Filed
Intermediate Court of Appeals
CAAP-10-0000181
26-FEB-2016
08:47 AM

NO. CAAP-10-0000181

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

IN RE: MARN FAMILY LITIGATION

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(MASTER FILE NO. 00-1-MFL)

MEMORANDUM OPINION
(By: Foley, Presiding Judge, Fujise and Ginoza, JJ.)

I.

This is a continuation of the appeal by Alexander Y. Marn (Marn) from the Partial Final Judgment entered on October 25, 2010 by the Circuit Court of the First Circuit (Circuit Court).[1] The Partial Final Judgment entered judgment against Marn as to the claims he asserted in Civil No. 98-4706-10 (Buyout Case) and as to the claims that were asserted against him in Civil No. 98-5371-12 (Judicial Accounting Case).

II.

This court initially dismissed this appeal on March 23, 2013, after Marn, pro se, filed an opening brief in pervasive non-compliance with Hawai'i Rules of Appellate Procedure (HRAP) Rule 28. On February 12, 2014, the Hawai'i Supreme Court vacated

---

[1] The Honorable Victoria S. Marks presided over the majority of the proceedings. The Honorable Rhonda A. Nishimura signed the Partial Final Judgment.

the order of dismissal and remanded the case to this court, holding that the dismissal violated HRAP Rule 30.

On April 15, 2014, this court ordered Marn to show cause why this appeal should not be dismissed for noncompliance with HRAP 28. In his reply, Marn, now represented by counsel, moved for leave to file a replacement brief. On July 24, 2014, this court found that Marn failed to show good cause, but imposed a lesser sanction than dismissal "in the interests of resolving this case on the merits[.]"

Marn was allowed to file a fully compliant amended opening brief on condition that, as a sanction, he pay reasonable attorneys fees and costs incurred by the appellees in responding to the first opening brief. Marn eventually paid these sums to the appellees and, through counsel, filed an amended opening brief on May 28, 2015.

Marn now argues nine points of error on appeal:

A.    The trial court abused its discretion by (1) refusing to allow Marn to purchase the Ala Wai Investments (AWI) partnership shares of James Y. Marn (James) and James K.M. Dunn, Successor Trustee of the Annabelle Y. Dunn Trust (Dunn), and (2) choosing instead to dissolve a viable Hawai'i business.

B.    The trial court erred in striking Marn's[2] demand for a jury trial.

C.    The trial court erred in ordering and entering summary judgment against Marn with respect to his claims for Quantum Meruit and Unjust Enrichment.

D.    The trial court abused its discretion by striking Marn's Answer and Counterclaim as a discovery sanction.

E.    The trial court abused its discretion by excluding Marn's expert witnesses.

F.    The trial court abused its discretion by disregarding the court's Special Master's Expert Witness Report to instead rely on lay opinion testimony.

---

[2]    References made in Marn's opening brief as to his co-plaintiff/co-defendant Eric Y. Marn (Eric) have been omitted as Eric is not a party to this appeal.

G.    The trial court abused its discretion in unjustifiably and prematurely appointing a Liquidating Receiver.

H.    The trial court (1) made erroneous Findings of Fact and (2) reached erroneous Conclusions of Law in the course of entering an Order regarding the Ten Grand Associates loan.

I.    The trial court (1) made erroneous Findings of Fact and (2) reached erroneous Conclusions of Law in the course of the June, 2006 Judicial Accounting Trial.

## II.

### Non-Compliance With HRAP Rule 28

In vacating this court's dismissal order, the Hawai'i Supreme Court stated, "nothing herein should be interpreted as precluding an appellate court from disregarding an individual argument that is not presented in compliance with HRAP Rule 28." In Re Marn Family Litigation, 132 Hawai'i 165, 170 n.7, 319 P.3d 1173, 1178 n.7 (2014). Indeed, the Hawai'i Supreme Court has "repeatedly stated that arguments not presented in compliance with HRAP Rule 28(b)(4) may be disregarded." Id. at 169, 319 P.3d at 1177. Thus, we may examine Marn's amended opening brief for compliance with HRAP Rule 28 and disregard non-conforming arguments.

Our review leads us to the conclusion that points of error C, D, E, F, H, and I should be disregarded because they fail to adequately cite the record and lack any discernable argument in support as required by HRAP Rule 28(b). HRAP Rule 28(b)(4) requires an appellant to indicate where in the record the alleged error occurred, and where in the record the alleged error was objected to or the manner in which the alleged error was brought to the attention of the court. Points of error C, D, E, F, H, and I either do not provide record citations documenting Marn's objections to the alleged error, provide only a large range of pages or provide no citations at all.

HRAP 28(b)(7) requires citations to the authorities, statutes, and parts of the record relied on in the argument. Marn's argument supporting points of error C, D, E, F, H, and I

3

include nothing more than conclusory statements that amount to pure conjecture. Marn fails to include adequate citations to the record, if any, which precludes review by this court. See, e.g., City & Cty. of Honolulu v. Sherman, 110 Hawai'i 39, 77, 129 P.3d 542, 580 (2006) ("[T]his court is not obligated to sift through a voluminous record to verify an appellant's inadequately documented contentions[.]"); Doe v. Doe, 118 Hawai'i 293, 305, 188 P.3d 807, 819 (App. 2008) (refusing to consider contention under HRAP 28(b)(3) where appellant "fail[ed] to cite to the record or otherwise provide specific and admissible evidence to back up her claim"); Honda ex rel. Kamakana v. Bd. of Trs. of Emps.' Ret. Sys. of State of Hawai'i, 108 Hawai'i 338, 348, 120 P.3d 237, 247 (2005) (a statement not substantiated with a citation to the record amounts to conjecture). Moreover, Marn cites no legal authority supporting his argument for these points of error. See, e.g., Kaho'ohanohano v. Dep't of Human Servs., 117 Hawai'i 262, 297 n.37, 178 P.3d 538, 573 n.37 (2008) ("This court will 'disregard [a] particular contention' if the appellant 'makes no discernible argument in support of that position[.]'" (citation omitted); Taomae v. Lingle, 108 Hawai'i 245, 257, 118 P.3d 1188, 1200 (2005) (where a contention lacks "any reasoning, supported by citations to case law or authority to constitute a discernible argument," the court should decline its consideration); Citicorp Mortg. Inc. v. Bartolome, 94 Hawai'i 422, 435, 16 P.3d 827, 840 (App. 2000) (no discernible argument presented where appellants "cite[d] no apposite authority and [made] no coherent argument on the issue from cognizable precedent").

This court is no longer faced with considering the submissions of a *pro se* litigant. Marn was given a second chance to comply with HRAP Rule 28 after making assurances that his new brief, with the benefit of counsel, would be compliant. Points of error C, D, E, F, H, and I and their corresponding arguments fall woefully short of Marn's promise and therefore this court

4

will exercise its discretion under HRAP Rule 28 and will disregard them.[3]

While the rest of Marn's opening brief is also noncompliant with HRAP Rule 28(b), his argument sections for points of error A, B, and G demonstrate some attempt to cite the record and provide legal authority. Thus, we will examine these points on their merits, to the extent we are able.

## III.

A.   The trial court did not abuse its discretion by dissolving the partnership and Marn had no statutory right to purchase the shares.

In support of point of error A, Marn argues that "the trial court could have, and should have, exercised its discretionary power and authority to order the sale of [the shares] in accordance with HRS § 414-415." HRS § 414-415(a) (2004) provides,

> In a proceeding under section 414-411(2) to dissolve a corporation that has no shares listed on a national securities exchange or regularly traded in a market maintained by one or more members of a national or affiliated securities association, the corporation may elect or, if it fails to elect, one or more shareholders may elect to purchase all shares owned by the petitioning shareholder at the fair value of the shares.

Although Marn admits this statute was not in effect when the judicial accounting complaint was filed,[4] he argues that the Circuit Court had broad discretionary power under HRS § 603-21.9(6) (1993)[5] and case law to retroactively apply it. Thus, by

_____

[3]   Counsel is warned that any future violations of HRAP Rule 28 may result in sanctions, including referral to the Office of Disciplinary Counsel.

[4]   HRS § 414-415, part of a new chapter, took effect on July 1, 2001. 2000 Haw. Sess. Laws, Act 244, §1 and § 4, at 733; 812. James filed his first amended complaint seeking dissolution by judicial decree on April 30, 2001.

[5]   HRS § 603-21.9(6) provides:

The several circuit courts shall have power:

(6) To make and award such judgments, decrees, orders, and mandates, issue such executions and other processes, and do such other acts and take such other steps as may be

(continued...)

not using its discretion to retroactively apply HRS § 414-415, Marn argues the Circuit Court abused its discretion by causing him substantial detriment.  This logic is fundamentally flawed.

A trial court abuses its discretion when it exceeds the bounds of reason or disregards rules or principles of law or practice to the substantial detriment of a party.  Amfac, Inc. v. Waikiki Beachcomber Inv. Co., 74 Haw. 85, 114, 839 P.2d 10, 26 (1992).  Here, the trial court applied the principles of law in effect at the time of the complaint:  HRS § 415-97 (1993)[6] and HRS Chapter 425D.  It is well-settled that "statutes are to be construed as having only a prospective operation unless the purpose and intention of the legislature to give them retrospective effect is expressly declared or is necessarily implied from the language used."  Taniguchi v. Ass'n of Apartment

---

[5](...continued)
> necessary to carry into full effect the powers which are or shall be given to them by law or for the promotion of justice in matters pending before them.

[6]    Although the Circuit Court cited to HRS § 414-411, HRS § 415-97 in effect at the time the complaint was filed, provided substantially similar language and read, in relevant part,

> The court shall have full power to liquidate the assets and business of a corporation:
>
> (1)    In an action by a shareholder when it is established:
>
> > (A)    That the directors are deadlocked in the management of the corporate affairs and the shareholders are unable to break the deadlock, and irreparable injury to the corporation is being suffered or is threatened by reasons thereof;
> >
> > (B)    That the acts of the directors or those in control of the corporation are illegal, or fraudulent; or
> >
> > (C)    That the shareholders are deadlocked in voting power and have failed, for a period that includes at least two consecutive annual meeting dates, to elect successors to directors whose terms have expired or would have expired upon the election of their successors; or
> >
> > (D)    The corporate assets are being misapplied or wasted[.]

Owners of King Manor, Inc., 114 Hawai'i 37, 48, 155 P.3d 1138, 1149 (2007) (citation and internal quotation marks omitted); HRS § 1-3 (2009) ("[n]o law has any retrospective operation, unless otherwise expressed or obviously intended"). More to the point, HRS § 414-483 (2004)[7] specifically provides for application of the repealed Chapter 415 to actions taken before the July 1, 2001 effective date of Chapter 414. Thus, Chapter 414 (2004) is inapplicable.

The Circuit Court dissolved AWI for three independent reasons, consistent with the criteria provided in HRS § 415-97:[8] (1) the shareholders were deadlocked; (2) the directors in control acted in a manner that was fraudulent; and (3) there was misapplication or waste of corporate assets. The Circuit Court also found clear and convincing evidence illustrating the oppressive, fraudulent, and wasteful conduct of Marn, stating that such misconduct, coupled with the deadlock of the sibling/shareholders, warranted dissolution by operation of law. Marn has not challenged this finding, and thus we are bound by it. Okada Trucking Co., Ltd. v. Bd. of Water Supply, 97 Hawai'i 450, 458, 40 P.3d 73, 81 (2002). The Circuit Court concluded that AWI was dissolved by operation of law and held that under HRS §§ 425E-801(3) and 425E-802 (2004), McCully Associates (MA) was dissolved by operation of law.

In light of the uncontested findings of the Circuit Court and the lack of any legal authority undermining its decision there is no basis for this court to find that the

---

[7]  HRS § 414-483 provides, in pertinent part,

(a) Except as provided in subsection (b), the repeal of a statute by this chapter does not affect:

(1)   The operation of the statute or any actions taken under it before its repeal[.]

[8]   Again, although the Circuit Court's order cites to HRS chapters 414 and 425E, the language of the statutes in effect at the time the accounting lawsuit was filed, HRS §§ 415-97 (1993) and 425D-801 and -802 (1993) is virtually identical.

7

Circuit Court disregarded rules or principles of law. Marn has failed to establish the Circuit Court abused its discretion.

**B.  Marn had no right to a jury trial.**

Marn argues in point B that the Circuit Court erred in striking his demand for a jury trial in the Judicial Accounting Case.  In his argument in support of this point, he also argues it was error not to afford him a jury trial in the Buyout case. The denial of a demand for trial by jury is a question of law subject to de novo review.  Credit Assocs. of Maui, Ltd. v. Brooks, 90 Hawai'i 371, 372, 978 P.2d 809, 810 (1999).

As we conclude Marn had no right to a jury trial in either case, this argument is unavailing.

**1.  Buyout Case sought the equitable remedy of specific performance.**

The right given by the Hawai'i Constitution and preserved by Hawai'i Rules of Civil Procedure (HRCP) Rule 38(a)[9] is the right to a jury trial in suits at common law.  "The test to determine whether a suit is 'at common law' is . . . whether the cause of action seeks 'legal' or 'equitable' relief.  In other words, courts look to the nature of the remedy to determine whether a jury trial is warranted."  Lee v. Aiu, 85 Hawai'i 19, 29, 936 P.2d 655, 665 (1997) (citation omitted).

In the Buyout Case, the sole remedy Marn sought was specific performance.  Marn stated he had "no adequate remedy at law, because the underlying asset of the Partnership is real property, the loss of which cannot be adequately compensated by damages."  In Kimball v. Lincoln, the Hawai'i Supreme Court held,

> [A] claim for specific performance is clearly equitable in nature and not a claim arising at common law.  Accordingly, appellant had no right to demand a jury trial of the claim for specific performance under HRCP 38(b) since the right to demand a jury trial is expressly limited to issues triable of right by a jury under that rule.

72 Haw. 117, 126, 809 P.2d 1130, 1134 (1991)

---

[9]  HRCP Rule 38(a) states, "[t]he right of trial by jury as given by the Constitution or a statute of the State or the United States shall be preserved to the parties inviolate."

Because Marn's claim for specific performance in the Buyout Case was equitable in nature, he had no right to demand a jury trial.

### 2. A judicial accounting is equitable in nature.

The law is clear that "[t]he action of account between partners is equitable in nature . . . and is addressed to the sound discretion of the court." Block v. Lea, 5 Haw. App. 266, 278, 688 P.2d 724, 733 (1984) (internal citation omitted). "[T]he general rule [is] that ordinarily an action at law will not lie in favor of a partner against another partner upon a demand growing out of a partnership transaction until there has been a settlement of accounts and a balance struck[.]" Lau v. Valu-Bilt Homes, Ltd., 59 Haw. 283, 290, 582 P.2d 195, 200 (1978) (citation and internal quotation marks omitted).

In Lau, the Supreme Court of Hawai'i noted that joint ventures are akin to partnerships and that rules governing partnerships generally apply to joint ventures. There, the "controversy, founded on contributions for advances made to the joint venture, [was] complex and one that obviously require[d] an accounting." Lau, 59 Haw. at 292, 582 P.2d at 201. There, "[t]he record clearly demonstrate[d] that the amount which appellee sought to recover for contributions for advances made to the joint venture was not accurately ascertainable by a jury." Id. To support this conclusion, the Hawai'i Supreme Court pointed to the "numerous documents and accounts" that were to be introduced into evidence, as well as the fact that many of the accounts were not complete or closed, as the joint venture affairs had not been wound up. Id. Thus, the Hawai'i Supreme Court held, the appellee's claim for contribution "involved the unravelling of extensive and complicated accounts which could not be conveniently or accurately investigated and adjusted by a jury. Further, this dispute involves a fiduciary relationship between appellee and the other joint venturers and obviously requires an accounting to settle it." Id. at 293, 582 P.2d at 202.

In <u>Thomas v. Schmelzer</u>, a partnership was dissolved by agreement, and the partner who remained in possession filed a complaint seeking a formal accounting and winding up. 796 P.2d 1026, 1028 (Idaho Ct. App. 1990). The responding partner filed four counterclaims against the petitioning partner, seeking general and punitive damages for misappropriation of partnership assets and rents, breach of fiduciary duty, reasonable rental value of partnership property used during the winding up, and the inclusion of certain contracts as assets of the partnership. <u>Id.</u> at 1034. In holding that the respondents "were not entitled as a matter of right to a jury trial on their counterclaims," the Idaho Court of Appeals explained, "[a]bsent the request for damages, these claims do not contain issues of a distinct legal nature. The issues are part of the equitable accounting sought in this action." <u>Id.</u>

The holding in <u>Thomas</u> is a common interpretation of the law regarding the right to a jury trial:

> [W]hile it is broadly accepted that a monetary award is generally a form of "legal" relief, it is not true that any award of monetary relief must necessarily be "legal" relief.[] It is well settled that equitable relief includes monetary damages when required to afford complete relief. Trust law remedies, for example, are equitable in nature yet include provisions of monetary damages . . . .
>
> Thus, . . . a court does not err in denying a jury trial when the monetary award sought is incidental to, or intertwined with, equitable relief. It does err when it denies a jury trial because of its determination that legal issues in the case are merely incidental to equitable ones.

8 Moore's Federal Practice § 38.43 (Matthew Bender 3d Ed.) (emphasis omitted).

Other jurisdictions have reached similar results. In <u>Boyce v. Hort</u>, plaintiff filed a complaint alleging several causes of action arising out of a partnership relationship between the parties, including causes of actions for breach of fiduciary duties and breach of the partnership agreement, as well as a claim of usurping partnership business opportunities. 666 So.2d 972, 973 (Fla. Dist. Ct. App. 1996). The complaint sought

a partnership accounting as well as an award of damages. Id. Defendant filed affirmative defenses and a counterclaim, and, like in the present case, "[a]ll allegations included in the affirmative defenses and the counterclaim [arose] out of the parties' alleged partnership agreement." Id. The counterclaim alleged breach of fiduciary duties, breach of contract, and usurping partnership business opportunities. Id. In holding there was no right to a jury trial, the Florida District Court of Appeal found,

> [T]he mere fact that [plaintiff] has included a count for breach of contract in his complaint does not transform this case of equity into a case at law. Our courts have cautioned against efforts to disguise equitable claims in partnership matters as breaches of contract or breaches of fiduciary duties by including requests for damages, explaining that such efforts do not transform the equitable claims into actions at law, and will not deprive a party of the right to an accounting under established partnership law.

Id. at 974.

In this case, the only legal issues and claims for damages arose out of the partnership agreement. James had an equitable right to judicial accounting, and until that accounting was complete, legal issues could not be decided. Although both parties sought damages for legal issues, those issues were intertwined with the equitable relief and were merely incidental to the judicial accounting--they did not have a distinct legal nature. Furthermore, the claims involving the partnership were extensive, complex, and the accounts had not been wound up, so a jury would not have been able to conveniently or accurately investigate the legal claims. Thus, the Circuit Court properly found that Marn had no right to a jury trial for the judicial accounting case.

C.    **The trial court did not abuse its discretion by appointing a liquidating receiver.**

Marn spends the first half of his argument on point of error G reasserting that the dissolution of AWI and MA was erroneous. As already addressed in Section A above, the Circuit Court did not err in dissolving AWI and MA.

11

Marn acknowledges that the Circuit Court had the power to liquidate a corporation whose directors and/or shareholders are deadlocked and continuation of the corporation's business is not practical, but argues that the exercise of this power is not "appropriate" in this case. Marn cites to In re Dissolution of Midnight Star Enters., L.P. ex rel. Midnight Star Enterprises, Ltd., 724 N.W.2d. 334 (S.D. 2006), to prove that "the law is clear that, even in the event of dissolution of a partnership, liquidation is not necessarily mandated."

In Midnight Star Enters., the South Dakota Supreme Court determined "whether the circuit court can order a partnership to be sold on the open market when the majority owners want to continue to run the business." 724 N.W.2d. at 339. In that case, the owners of the majority interest, 93.5 partnership units, wanted to continue the business. Id. at 340. In noting that "to sell an owner's property without [his] consent is an extreme exercise of power warranted only in clear cases," (citations and internal quotations omitted), the court saw no reason not to allow the withdrawing partner to be bought out after dissolution. Id.

The facts of Midnight Star Enters. are substantially different from the facts of this case. Here, only fifty percent of the owners (Marn and Eric) were in favor of continuing the business. Further, the history of this dispute, and the explicit findings that Marn had acted oppressively, fraudulently, and had misapplied or wasted corporate assets made it a clear case that the Circuit Court's exercise of power was warranted. Moreover, James applied for the appointment of a liquidating receiver pursuant to HRS § 425D-803 (1993).[10]

---

[10] HRS Chapter 425D was effective Janaury 1, 1990, 1989 Haw. Sess. Laws Act 288, § 5 at 643, and was repealed and replaced by HRS Chapter 425E effective July 1, 2004. 2003 Haw. Sess. Laws Act 210 §§ 14, 16 at 637.

Under HRS § 425D-803, where a limited partnership is without a general partner,[11] "the limited partners[ ] may wind up the limited partnership's affairs; but the circuit court of the circuit in which the principal place of business of the limited partnership is located may wind up the limited partnership's affairs upon application of any partner[.]"  Thus, the Circuit Court had statutory authority to liquidate the partnership and did not abuse its discretion by exercising this power.

## IV.

Based on the foregoing, we affirm the October 25, 2010 Partial Final Judgment entered by the Circuit Court of the First Circuit.

DATED:  Honolulu, Hawai'i, February 26, 2016.

On the briefs:

Daniel W. Kelsberg,
for Appellant.

Steven Guttman and
Dawn Egusa,
(Kessner Umebayashi Bain &
Matsunaga),
for Plaintiff-Appellee
James K.M. Dunn, as Successor
Trustee of the Annabelle Y.
Dunn Trust, dated June 18,
1994.

Mark Desmarais,
(Tom Petrus & Miller),
for Plaintiff-Appellee
James Y. Marn, Jr.

Louise K.Y. Ing and
Zachary M. DiIonno,
(Alston Hunt Floyd & Ing),
for Liquidating Receiver
S. Steven Sofos, successor to
Liquidating Receiver Thomas E.
Hayes.

Presiding Judge

Associate Judge

Associate Judge

---

[11]     MA was without a general partner, because AWI, its general partner, had been dissolved.

13